UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES MORRIS, | Case No. 3:23-cv-00042-ART-CSD |
| Plaintiff, | ORDER ADOPTING IN PART REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| v. | (ECF No. 44) |
| RN MELISSA MITCHELL, et al., | |
| Defendants. | |

Plaintiff Charles Morris, who is incarcerated at Nevada Department of Corrections, brings this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") against Director of Nursing John Keast, and Nurses Melissa Mitchell and Gaylene Fukagawa. Plaintiff brings an Eighth Amendment claim and ADA claim alleging that he was not provided with the mobility assistance equipment that he requires, resulting in injury and pain, and that the lack of appropriate equipment prohibited him from performing daily tasks.

Before the Court is Defendants' motion for summary judgment. (ECF No. 32.) Magistrate Judge Denney issued a Report and Recommendation ("R&R") recommending that Defendants' motion be granted because there is no evidence that any of the Defendants named in this action personally participated in the alleged constitutional violation. (ECF No. 44.) Judge Denney's R&R also rejected Plaintiff's objections to Defendants' errata to their motion for summary judgment. (*Id.*) For the following reasons, the Court adopts Judge Denney's R&R in part. The court adopts the R&R as to the issue of Defendants' errata, summary judgment in favor of Defendants Fukagawa and Mitchell, and summary judgment in favor of Defendants on Plaintiff's ADA claim. The Court rejects the R&R as to summary judgment for Defendant Keast.

**I.    FACTS**

The facts, as recited in Judge Denney's R&R, are as follows. Any changes

1

are noted in a footnote.

Plaintiff required mobility assistance in the form of a walker or wheelchair. (ECF No. 34-2 at 2, 3, 4, 5, 6.)

Plaintiff sent a kite on August 6, 2020, stating that he needed a new walker because the back wheels of his walker were locking up, and he needed a walker that would support his height (6'3") and weight (360 lbs.).[1]

At a clinic visit on August 21, 2020, Plaintiff was noted as ambulating slowly with a limp, and he was using a walker. (ECF No. 34-2 at 4.)[2]

On January 30, 2021, Plaintiff submitted an emergency grievance (number 20063114997), where he said he had complained about his walker being unsafe since it was given to him, and it finally broke, causing him to fall and injure his back. A correctional officer then brought him a different walker, but it was too short, the back right wheel was already bowing, and it was missing the back support bar. The response advised Plaintiff that his grievance was not an emergency, and that he should kite to see a doctor or report a "mandown." (ECF No. 37 at 26.) The supervisor who signed the grievance also noted that it would be forwarded to the director of nursing. (*Id.*)

Later that day, Plaintiff submitted another emergency grievance (number 20063114945), reiterating that his walker broke and he fell and hurt his back, and that he had been issued another walker that was too short and unsafe for him to use because the right rear wheel bowed with the stress of his weight and it was missing the back bar for support. The response states that Plaintiff was provided a wheelchair that was available and appropriate at the time. There is

---

[1] Judge Denney's R&R stated here that "There was no response to the kite or even an indication it was received." The Court disagrees. In the top right corner of the August 6, 2020 there is a handwritten capital "N" and a handwritten checkmark next to the handwritten word "walker." (ECF No. 37 at 25.)

[2] At a clinic visit on May 20, 2020, it was noted that Plaintiff was ambulatory with a walker. (ECF No. 34-2 at 4.)

also a note he should kite to request a new one. (ECF No. 37 at 27.)

On February 1, 2021, Plaintiff sent a kite, indicating that he had fallen and was injured when his walker snapped beneath him on January 30, 2021.[3] The response noted that Plaintiff needed a new extra large walker. (ECF No. 37 at 28; ECF No. 34-2 at 5.)

On February 2, 2021, Plaintiff filed an emergency grievance (number 20063115224), where he reported that he had been given a wheelchair on January 30, 2021, which was not appropriate. He said that he mentioned to his unit officers and his caseworker that the wheelchair was "killing" him and causing him more pain, and that the back of the wheelchair collapsed when he leaned against it. He indicated that he left the infirmary and hit a bump and was ejected from the wheelchair and he hurt his back again. He asked for proper medical equipment. In response, Michael Flamm told him that it was not a medical emergency and he should follow up with a medical request form. (ECF No. 32-2 at 4.)

On February 5, 2021, Plaintiff was seen in the clinic by a nurse after his fall when his bariatric walker broke. Plaintiff reported he had been given a standard wheelchair that was not wide enough, and he complained of increased discomfort. The nurse gave him a Tylenol pain pack and encouraged Plaintiff to follow up when they had a bariatric wheelchair or walker available. (ECF No. 34-2 at 3.)

He was seen in the clinic again on February 11, 2021, after being referred by a nurse for complaints of hip pain. It was noted that he used a wheelchair for mobility. (ECF No. 34-2 at 3.) The provider's orders state that Plaintiff could

---

[3] The kite stated in relevant part, "[t]his is my third kite requesting medical attention since my fall on 1-30-21 my walker snapped underneath me and I was injured, later that evening I came to medical and wasn't seen or examined because there was no doctor and the walker and wheelchair is unsafe for me..." (ECF No. 34-2.)

1    temporarily use the wheelchair for mobility until a walker was available and he
2    was able to use it. (ECF No. 34-2 at 6.)

3         In a filing made on February 12, 2021, in case 3:18-cv-00310-CLB3,
4    Plaintiff mentioned that the wheelchair he had been given was too small and tight
5    on his hips, which was exacerbating his injury. He said he had mentioned this to
6    medical staff, but they had not exchanged it. Plaintiff was given a wider
7    wheelchair on February 10, 2021, but claims that wheelchair was too low, and
8    was missing a break which caused him to fall. (ECF No. 37 at 34-36; ECF No. 54
9    in 3:18-cv-00310-CLB.)

10        Progress notes dated March 29, 2021, indicate that Plaintiff was seen for
11   medication renewal and to pick up his new seated walker. (ECF No. 34-2 at 2.)
12   According to the declaration of Ms. Fukagawa, she did not issue the new walker
13   to him. (ECF No. 32-1.) Plaintiff acknowledges he received a walker on March 29,
14   2021. (ECF No. 37 at 8, 13.)

15        There is an indication that Plaintiff pursued a formal grievance for
16   grievance 20063115224 after he was told his emergency grievance was not an
17   emergency, and while it appears the informal level grievance was rejected by
18   Jessica Rambur as duplicative, he appears to have eventually proceeded to the
19   second level on April 4, 2021, which was received by staff on April 6, 2021. There
20   is a notation that Keast sent a response to the medical administration on April
21   12, 2021. (ECF No. 32-2 at 2.) On April 8, 2021,[4] Keast called up to medical to
22   make sure Plaintiff's walker was okay, and Plaintiff said it was working well for
23   him. (ECF No. 34-2 at 2.)

24        Plaintiff was eventually also issued an appropriately-sized wheelchair on
25   February 25, 2022. (ECF No. 34-3 at 2, 4; Fukagawa Decl., ECF No. 32-1.)

26   _____

27   [4] The R&R stated here "presumably after he became aware of Plaintiff's mobility
28   device issue through the grievance." The Court does not include this language
     because the Court does not presume as to when Keast became aware of the issue.

4

1

2

## II.    LEGAL STANDARD

### A. Review of Reports and Recommendations

Under the Federal Magistrates Act, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Because Plaintiff objects to Judge Denney's R&R, the Court reviews the issues *de novo*.

### B. Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In analyzing this motion, the Court considers evidence in the record, including Plaintiff's verified complaint. (ECF No. 6.) A verified complaint may be used as an opposing affidavit under Rule 56. "[a] verified complaint may be

1    treated as an affidavit to the extent that the complaint is based on personal

2    knowledge and sets forth facts admissible in evidence....” *Lew v. Kona Hospital*,

3    754 F.2d 1420, 1423 (9th Cir.1985). Mr. Morris’s complaint has been verified;

4    “because it is based on personal knowledge and sets forth specific facts

5    admissible in evidence, it may be considered in opposition to summary

6    judgment.” *McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987) (citing *Lew*, 754 F.2d

7    at 1423); (ECF No. 6 at 6.)

8    **III.    ANALYSIS**

9        **A. Defendants’ Errata**

10       Defendants submitted an errata to their motion for summary judgment to

11   submit the authenticating declarations from Deborah Hernandez (ECF No. 38-1,

12   authenticating Plaintiff’s medical records) and Robert Hartman (ECF No. 38-2,

13   authenticating grievance 20063115224). Plaintiff responded that the unusual

14   occurrence report authenticated by Deborah Hernandez (filed under seal at ECF

15   No. 34-1) was not relevant to this case, and that the Hernandez declaration

16   erroneously states that the records are “Richard’s medical file.” Judge Denney’s

17   order accepted Defendants’ representation (at ECF No. 42) that the declaration

18   contained a typographical error and construed the declaration as applying to

19   Plaintiff’s records. Additionally, Judge Denney found that the unusual

20   occurrence report was relevant to this case because it shows that Plaintiff knew

21   the process to obtain medical services and call a “mandown.” Judge Denney noted

22   that ultimately, Defendants argument that Plaintiff knew how to call a

23   “mandown” did not impact the Court’s determination of the motion.

24       The Court finds that Judge Denney’s order as to Defendants’ errata was

25   correct. While it does not impact the Court’s analysis of this motion, the unusual

26   occurrence report does support Defendants’ argument that Plaintiff knew how to

27   call a mandown. Additionally, Judge Denney was correct to accept Defendants’

28   representation that the use of the name “Richards” at one point in the declaration

was a typo. Each page of each document authenticated by the Hernandez declaration has Charles Morris's name on it. (ECF Nos. 34-1; 34-2; 34-3.) The Court adopts Judge Denney's analysis and decision as to this issue.

### B. Eighth Amendment Claim

Judge Denney's R&R recommended that the Court grant summary judgment for Defendants because based on a finding that Plaintiff failed to show personal participation, as required for liability under § 1983. The Court rejects this recommendation because it finds that there is a genuine dispute of fact as to the personal participation of Defendant Keast. Because Defendants' other arguments regarding deliberate indifference and qualified immunity were not addressed by the R&R, the Court does so here. The Court finds that there are genuine disputes of material fact which preclude summary judgment as to deliberate indifference, and Defendants are not entitled to qualified immunity.

### 1. Personal Participation

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Ninth Circuit has held that a defendant can personally participate in a violation by denying a grievance. *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *see also Jackson v. Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019), *aff'd*, No. 20-15007, 2022 WL 16756349 (9th Cir. Nov. 8, 2022). In *Snow v. McDaniel*, the Ninth Circuit denied summary judgment to a prison warden and associate warden because they were aware, through the grievance process and other documentation, that the prisoner needed surgery and they "failed to act to prevent future harm." 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014). However, "[m]erely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation." *Jackson*, 2019 WL 6499106,

at *7.

Defendants argue that there is "no evidence that Keast, Mitchell, or Fukagawa responded to a medical kite or grievance in a negative way the year prior to the incident on January 30, 2024." (ECF No. 32 at 8.) Plaintiff responds that "Keast as a Director of Nursing was aware of the need for a new walker, he had to approve the order, Defendant's Mitchell and Fukagawa process medical kits were they were submitted." (ECF No. 37 at 10.)

Judge Denney's R&R found that there was no evidence that Defendants Keast, Mitchell, or Fukagawa participated in the alleged denial or delay of medical care. The Court agrees that there is no dispute of fact that Fukagawa and Mitchell did not personally participate but disagrees as to Defendant Keast.

### a. Defendant Fukagawa

Defendant Fukagawa submitted a declaration in which she stated that she has no authority over Plaintiff's medical decisions as a Certified Nursing Assistant, and only scheduled delivery of medical devices to Mr. Morris which were prescribed by other medical providers. (ECF No. 32-1 at 3.) Plaintiff has not produced any evidence to dispute this fact. Thus, even if Fukagawa was aware of any of Plaintiff's complaints, there is no evidence that she had the authority to resolve the issue complained of. *See Jackson*, 2019 WL 6499106, at *7. Therefore, summary judgment should be granted as to Defendant Fukagawa.

### b. Defendants Mitchell and Keast

### i. August 6, 2020 Kite

Plaintiff's August 6, 2020 kite concerned his request for a new walker because the wheels on his current walker were locking up, and he needed a new walker that would support his weight. Defendants assert that the absence of signatures or a response by any Defendant is sufficient to establish that there was no personal participation by Defendants as to this grievance. The Court disagrees.

First, Defendants have failed to demonstrate that Keast and Mitchell lacked authority to resolve Plaintiff's medical issue. Though summary judgment is appropriate if the evidence shows the defendant lacked authority to resolve the plaintiff's issue, *see Stewart v. Warner*, No. C15-5243 RBL-KLS, 2016 WL 1104893, at *5 (W.D. Wash. Feb. 29, 2016), *report and recommendation adopted*, No. C15-5243 RBL-KLS, 2016 WL 1089974 (W.D. Wash. Mar. 21, 2016) (granting summary judgment due to lack of participation where record reflected that nurses had no medical decision-making authority), it is not appropriate when a defendant provides no evidence regarding their authority, *see See Silva v. Stogner*, No. 3:20-CV-00027-ART-CSD, 2024 WL 4957332, at *3 (D. Nev. July 24, 2024), *report and recommendation adopted*, No. 3:20-CV-00027-ART-CSD, 2024 WL 4891854 (D. Nev. Nov. 26, 2024) (summary judgment denied where there was no declaration stating what defendant's position was or that they did not have the ability to address the issue complained of). Defendants have failed to submit any evidence, such as a declaration, stating what job title, role, and responsibilities Defendants Keast and Mitchell held during the period at issue, whether they reviewed Plaintiff's kites, or whether they had the authority to address Plaintiff's medical needs. Defendants do not dispute Plaintiff's allegations that during the relevant times Defendant Keast was Director of Nursing and Defendant Mitchell was a nurse.

Second, Defendants cannot defeat participation by merely pointing to an unsigned kite that was received by prison officials. The handwritten notations on the August 6, 2020 kite suggest that someone did receive and review it. The absence of a signature on the kite leaves open the question of who that was. While the August 6, 2020 kite is unsigned, the evidence indicates that it was received. There is no writing or signature in the area below Plaintiff's complaint in which correctional staff would write a response to Plaintiff's kite. (ECF No. 37 at 25.) However, in the top right corner there is a handwritten capital "N" and a

handwritten checkmark next to the handwritten word "walker." (*Id.*) It thus appears that the kite was received by someone, but there is no evidence as to who viewed, processed, or responded to the kite—or failed to do so. This kite is similar to others submitted by Plaintiff in that it was unsigned, but a notation indicates that it was received. (See ECF Nos. 34-2 at 5; 34-3 at 4.) There is evidence that Keast views and responds to medical kites. (ECF No. 34-2 at 5: ECF No. 32 at 11, "Keast's only involvement was responding to a medical kite in the affirmative that a new, extra-large walker was needed, and then verifying the walker was satisfactory."). Additionally, Plaintiff states that he spoke to Keast about the need for a new walker both in medical and when he visited Plaintiff's unit. (ECF No. 37 at 12.)[5]

As to Defendant Mitchell, while Defendants have failed to show that she lacked the authority to address Plaintiff's requests, there is still insufficient evidence to demonstrate her notice of Plaintiff's need for a new walker.

As to Defendant Keast, there is evidence in the record which suggests that Keast does review and/or respond to medical kites, as well as evidence that Plaintiff told Keast of his need for a new walker on other occasions. Defendants have therefore failed to show that there is an absence of a dispute as to whether Keast had the authority to resolve Plaintiff's complaint and thus whether he participated the failure to respond to Plaintiff's August 6, 2020 complaint that he needed a new walker.

### ii. January 30- March 29, 2021 Complaints

---

[5] Plaintiff asserts this in his opposition to summary judgment. Testimony from Plaintiff regarding statements that he made to Defendant Keast about the need for a new walker would be admissible in evidence at trial. *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of [Fed. R. Civ. P. 56].")

1    Between Plaintiff's fall on January 30, 2021 and the issuance of a new

2    wheelchair on March 29, 2021, Plaintiff sent several kites and grievances

3    regarding his fall and stating that the devices provided to him as a replacement

4    were inadequate. (ECF Nos. 32-2; 37 at 28.)

5    There is no evidence that any of these were reviewed by Defendant Mitchell

6    or that Plaintiff saw Mitchell during this time frame. Plaintiff's general allegations

7    that Mitchell was aware of his need for a new walker are insufficient to create a

8    genuine issue of fact regarding her participation.

9    There is some evidence of participation by Keast, who was Director of

10    Nursing. While there is no indication that Keast reviewed any of the grievances

11    directly during this time period, Plaintiff's January 30, 2021 grievance

12    (20063114997), was reviewed by a Peter Garibaldi, who stated "Will forward

13    information to director of nursing." (ECF No. 32-2 at 3.) This grievance stated

14    that he had fallen when his walker broke, that his back, neck, and wrist are

15    hurting, and that the walker and wheelchair he had been given were "bowing"

16    and "missing the back support bar." (*Id.*) There is also evidence that Keast

17    reviewed Plaintiff's medical kite sent on February 1, 2021. The kite states that he

18    fell when his walker broke and that the equipment he had been given in response

19    was unsafe. (*Id.*) Although his February 1, 2021 kite is not signed, it contains a

20    notation in the response field: "needs new xlrg walker." (*Id.*) Defendants concede

21    that this notation was written by Keast, explaining "Keast's only involvement was

22    responding to a medical kite in the affirmative that a new, extra-large walker was

23    needed, and then verifying the walker was satisfactory" (ECF No. 32 at 11.)

24    Because this evidence could tend to show that Keast was made aware of Plaintiff's

25    fall and his complaints about the replacement mobility devices he was given, the

26    Court denies summary judgment as to Defendant Keast's personal participation

27    in the alleged failure to provide an adequate mobility device.

28    There is at least a genuine issue of material fact as to the extent of Keast's

knowledge of Plaintiff's August 6, 2020 request, knowledge of Plaintiff's complaints regarding his mobility devices after his January 30, 2021 fall, and his authority to address his complaints. For these reasons, Defendants have failed to meet their burden of showing that Defendant Keast is entitled to summary judgment because of a lack of personal participation.

### 2. Deliberate Indifference to Serious Medical Needs

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to "serious medical needs." *Id.* at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow*, 681 F.3d at 985.

To satisfy the objective standard of the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the subjective standard of the second prong, a plaintiff must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

### a. Serious Medical Need

"To establish a claim of inadequate medical care, a prisoner must first show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019); *see also Jett*, 439 F.3d at 1096; *Clement v. Gomez*, 298 F.3d 898, 904 (9th

Cir. 2002); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). The court should consider whether a reasonable doctor would think that the condition is worthy of comment, whether the condition significantly affects the prisoner's daily activities, and whether the condition is chronic and accompanied by substantial pain. *Lopez v. Smith*, 203 F.3d 1122, 1131–132 (9th Cir. 2000).

Plaintiff's complaint states that he suffers from a pre-existing back injury. (ECF No. 6 at 5.) In his response to Defendants' motion for summary judgment, he further specifies that he has a severe disc desiccation with modic endplate changes and severe canal and neuroforaminal narrowing. (ECF No. 37 at 9.) Plaintiff's medical records indicate that Plaintiff suffers from and has been regularly treated for chronic back pain. (ECF No. 34-2 at 2-4.) Progress notes from May 20, 2020 and August 21, 2020 indicate that Plaintiff ambulates with a walker. (*Id.* at 4.) A progress note from after his January 30, 2021 fall indicates that he was using a wheelchair for mobility. (*Id.* at 3.) Plaintiff also states in an affidavit that he has balance issues and trouble standing. (ECF No. 37 at 35.) Defendants do not specifically contest that Plaintiff has a back injury which causes chronic pain, or that he is requires a walker or wheelchair for mobility.[6]

In sum, the evidence shows that Plaintiff has regularly required medical treatment for back pain, which medical providers have commented was "chronic," and that he requires at least a walker to ambulate. (ECF No. 34-2 at 2-4.) Defendants have not presented evidence to the contrary. Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, there is at least a genuine dispute of material fact as to whether his back pain is a serious medical need. *See Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 503 (9th Cir. 2017) (finding genuine dispute of fact as to whether back pain was serious medical need

---

[6] Defendants briefly argue that "Morris has not shown that any Defendant purposefully ignored or failed to respond to his possible medical need in order to establish deliberate indifference." (ECF No. 32 at 8.)

based on medical evaluations and provider's descriptions that inmate's pain was "excruciating" and "chronic"). Additionally, there is at least a genuine dispute of fact as to whether Plaintiff had a serious medical need for a mobility device such as a properly fitting walker or wheelchair.

### b. Deliberate Indifference

Delay of, or interference with, medical treatment can amount to deliberate indifference. *See Jett*, 439 F.3d at 1096; *Clement*, 298 F.3d at 905; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez*, 203 F.3d at 1131; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46*; Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (three-month delay in providing dentures to inmate, causing teeth to break and his gums to bleed, could amount to deliberate indifference); *Jett,* 439 F.3d at 1097-98 (two and a half month delay in submitting request for orthopedic consult to set and cast plaintiff's broken thumb, causing further pain and improper healing, precluded summary judgment on deliberate indifference).

### i. Delay

Plaintiff alleges that there was a delay of over seven months in providing him a suitable walker—from his first complaint on August 6, 2020, until he received a new properly fitting walker on March 29, 2021. Plaintiff alleges in his complaint that he was "constantly told that medical doesn't have any walkers" and "instead of ordering a new one, Plaintiff had to wait [un]til one was made available." (ECF No. 6 at 3.)

Plaintiff was eventually given a new bariatric walker on March 29, 2021, approximately two months after his initial walker broke, and over seven months after his initial kite requesting a new one. (ECF No. 34-2 at 2.) Defendants have

provided no evidence as to when the new walker was ordered. Plaintiff's progress notes on February 5, 2021 state that the nurse "encourage[d] Mr. Morris to follow up when we have a bariatric w/c or walker available." (ECF No. 34-2 at 3.) A progress note on February 11, 2021 states "may temporarily use wheelchair for mobility until walker is available and able to use it." (*Id.* at 6.)[7] It is therefore unclear whether Defendants responded to Plaintiff's complaints by ordering a new walker, or whether there was a period of time in which they failed to act and instead required Plaintiff to wait until a walker was "available."

A delay in providing necessary medical equipment can amount to deliberate indifference. In *Hunt v. Dental Dep't*, the Ninth Circuit reversed a grant of summary judgment for defendants, finding that an inmate's claim of a three-month delay in getting new dentures, which caused his teeth to break and his gums to bleed, could amount to deliberate indifference. 865 F.2d 198, 201 (9th Cir. 1989). There was evidence in *Hunt* that two defendants were aware of his condition and denied his requests for proper treatment. The court concluded that "from the facts alleged, it reasonably could be concluded that the delay was deliberate and that it caused Hunt to suffer unnecessary and wanton infliction of pain." *Id.* (internal quotation marks omitted).

In *Lavender v. Lampert*, 242 F. Supp. 2d 821, 848-49 (D. Or. 2002), a district court denied summary judgment for defendants on deliberate indifference where there was an unnecessary delay in providing properly fitted, medically necessary orthopedic footwear to an inmate plaintiff. During the period of delay, ultimately lasting 21 months, the plaintiff suffered from pain and damage to his toes, which eventually required him to use a wheelchair. *Id.* The court denied summary judgment even though the plaintiff was examined and treated during

---

[7] There is a penciled in comment next to this note which appears to say "purchasing." It is unclear when this was written, who wrote it, and when the new walker was actually ordered—although it appears from the note that it may have occurred on or after February 11, 2021. (*Id.*)

that period, finding that although he did receive treatment, there were "unnecessary delays" in providing plaintiff with the necessary footwear. *Id.* And in *Elmore v. Washington Dep't of Corr.*, No. 13-CV-5946-RJB-JRC, 2015 WL 3447367, at *15 (W.D. Wash. Apr. 13, 2015), r*eport and recommendation adopted in part*, No. 13-5946 RJB JRC, 2015 WL 3448123 (W.D. Wash. May 28, 2015), a court denied summary judgment where the plaintiff demonstrated a "repeated and predictable" need for a wheelchair, and plaintiff was regularly denied the use of one.

Here, a reasonable juror could find that Plaintiff needed a working mobility device from August 6, 2020, until March 29, 2021. Defendants offer no evidence as to when the new walker was ordered. Plaintiff contends, and evidence supports, that instead of a new walker being ordered, he was told that he needed to wait until one was "available." (ECF Nos. 6 at 3; 34-2 at 3, 6.) Because Defendants have proffered no evidence as to when a new walker was ordered, a reasonable juror could find that there were unnecessary delays in providing Plaintiff with a safe and working mobility device.

### ii.   Further Injury

Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46*; Shapley*, 766 F.2d at 407. Plaintiff alleges that the delay in providing him with a proper walker resulted in his fall on January 30, 2021. He alleges that the fall exacerbated his preexisting back pain and caused injury to his hip. (ECF No. 6 at 4-5.) Plaintiff further alleges that the inadequate medical equipment he was given after his fall (a walker which could not support his weight and a wheelchair that was too small for him) exacerbated his back pain, as well as causing bruising and injury to his hips.

The evidence supports Plaintiff's contentions about increased pain and/or injury due to his fall. His affidavit says that during the January 30, 2021 fall, one

1    of the bars on his walker rammed into his left hip which further hurt his back.
2    (ECF No. 37 at 34.) On February 5, 2021 his progress notes state that he was
3    seen for "back pain [] fall...states approx. 1 wk ago he fell when his wheel on his
4    bariatric walker broke." (ECF No. 34-2 at 3.) On February 11, 2021 his progress
5    notes state that he was referred by nurse for "left hip pain after falling off last
6    week when the walker broke," and that he was prescribed medication for it. (*Id.*
7    at 3, 6.)

8           The evidence also supports Plaintiff's contention that the equipment he was
9    given after his fall exacerbated his pain. His February 5, 2021 progress notes
10   state that "i/m states he was given a wheelchair – standard. The standard w/c is
11   not wide enough and i/m is reporting increased discomfort." (*Id.* at 3.) He was
12   given Tylenol by the nurse. (*Id.*) Plaintiff's affidavit states that the wheelchair was
13   causing "more pain and suffering to my already injured left hip and my pre-
14   existing back issues."  (ECF No. 37 at 35.) In his February 2, 2021 grievance,
15   Plaintiff stated that the wheelchair "is killing me and also causing me more pain,"
16   that he had fallen out of the wheelchair and hurt his back again when it hit a
17   bump and the back failed, that it was "too small for me and my size I'm squished
18   into this thing," and was causing sores and bruises on his legs, thighs, and hips.
19   (ECF No. 32-2 at 2.) Plaintiff's affidavit further states that the too-small
20   wheelchair "caused me to be bruised on both hips and they both were completely
21   "raw."" (ECF No. 37 at 36.) Plaintiff also attested that he asked for a "lay in" which
22   would have provided relief by having his meals delivered, but this request was
23   denied. (*Id.* at 35.)

24          Based on the evidence, there is at least a genuine issue of material fact as
25   to whether the delay in providing Plaintiff with a properly fitting mobility device
26   caused Plaintiff further harm. There is evidence in the record that Plaintiff's injury
27   was exacerbated by his January 30, 2021 fall, and that the inadequate
28   replacement equipment caused him pain and further injury.

In conclusion, because the Court finds that there are genuine issues of material fact as to Plaintiff's serious medical need, whether there was a delay in providing Plaintiff with a proper mobility device, and whether this delay caused further injury, summary judgment is denied on the merits of Plaintiff's Eighth Amendment claim.[8]

### C. ADA Claim

The ADA applies in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A prisoner states a colorable claim under the ADA if he alleges that he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). A prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*,

---

[8] While not necessary to its denial of summary judgment on deliberate indifference, the Court notes that district courts in this circuit and at least one circuit court have found deliberate indifference where an inmate was denied mobility aids or other medical equipment: *Casey v. Lewis*, 834 F. Supp. 1569, 1581 (D. Ariz. 1993) ("Mobility impaired inmates must be provided with wheelchairs and other mobility aids."); *Thomas v. Quintana*, No. CV 10-2671 DDP (FMO), 2011 WL 13315434, at *9 (C. D. Cal. Nov. 3, 2011), *report and recommendation adopted*, No. CV 10-2671 DDP (FMO), 2012 WL 13124073 (C. D. Cal. Mar. 23, 2012) (denying motion to dismiss Eighth Amendment claim for failure to provide a back brace and medical trapeze); *Elmore v. Washington Dep't of Corr.*, No. 13-CV-5946-RJB-JRC, 2015 WL 3447367, at *15 (W.D. Wash. Apr. 13, 2015), *report and recommendation adopted in part*, No. 13-5946 RJB JRC, 2015 WL 3448123 (W. D. Wash. May 28, 2015) (denying summary judgment on Eighth Amendment claim where plaintiff demonstrated that she had a repeated and predictable need for a wheelchair and her requests for one were routinely denied); *Johnson v. Hardin County*, 908 F.2d 1280, 1284 (6th Cir. 1990) (summary judgment on Eighth Amendment claim where there was evidence that the plaintiff was denied crutches).

546 U.S. 151, 157 (2006). However, claims for inadequate medical care do not fall under the ADA; the ADA "prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty.*, Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010) (concerning claims under the ADA), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

Defendants argue that summary judgment should be granted in their favor as to Plaintiff's ADA claim because there is no evidence that Keast, Mitchell, or Fukagawa were involved in Morris's care, and there is no evidence that he was excluded from receiving any prison services or refused an accommodation for his mobility. As to the first argument, as discussed above, the Court denies summary judgment on this ground as to Keast and grants it as to Fukagawa and Mitchell.

As to Defendants' second argument, they do not dispute that Plaintiff requires the use of a walker or wheelchair for mobility. Rather, they argue that he was not (1) refused an accommodation or (2) excluded from any services. Plaintiff argues that providing him with faulty equipment that broke under his weight and exacerbated his pain constituted a failure to provide accommodation because "without a reliable walker or a wheelchair it was as if the Plaintiff never had anything at all" and denied him mobility. (ECF No. 37 at 18). Plaintiff's affidavit also states that on at least one occasion, he missed dinner and pill call because he "couldn't make it on the walker because it was unsafe for me to use at that time." (*Id.* at 34.)

While Plaintiff has shown a genuine dispute of fact as to whether Defendants were deliberately indifferent to his serious medical needs by delaying treatment in the form of a working mobility device, Plaintiff has failed to provide evidence to show that he was denied access to services in light of this. Plaintiff only states that on one occasion, he was unable to make it to dinner or pill call, and there is no additional evidence that Plaintiff was excluded from services due to his inadequate mobility devices. Therefore, Plaintiff has not put forth evidence

to show an ADA violation, and summary judgment for Defendants is appropriate as to this claim.

### D. Qualified Immunity

#### 1. Legal Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Under this analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (citation and internal quotation marks omitted). First, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* Courts exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

1    "To be clearly established, a right must be sufficiently clear that every

2    reasonable official would have understood that what he is doing violates that

3    right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam). "[A] court must

4    define the right at issue with 'specificity' and 'not … at a high level of generality.'"

5    *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *City of*

6    *Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)). "A constitutional

7    right is clearly established if every reasonable official would have understood that

8    what he is doing violates that right at the time of his conduct." *Sampson*, 974

9    F.3d at 1018–19 (citation and internal quotation marks omitted).

10    To conclude that the right is clearly established, the court need not identify

11    an identical prior action. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

12    However, "existing precedent must have placed the statutory or constitutional

13    question beyond debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir.

14    2018) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per

15    curiam)). Although both the "clearly established right" and "reasonableness"

16    inquiries are questions of law, where there are factual disputes as to the parties'

17    conduct or motives, the case cannot be resolved at summary judgment on

18    qualified immunity grounds. *See Rosenbaum v. City of San Jose*, 107 F.4th 919,

19    924 (9th Cir. 2024) ("Where factual disputes exist as to the objective

20    reasonableness of an officer's conduct, the case cannot be resolved at summary

21    judgment on qualified immunity grounds.") (citation omitted); *Torres v. City of*

22    *Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective

23    reasonableness of an officer's conduct turns on disputed issues of material fact,

24    it is a question of fact best resolved by a jury . . .; only in the absence of material

25    disputes is it a pure question of law.") (citations and internal quotation marks

26    omitted).

27    Defendants argue that they are entitled to qualified immunity because (1)

28    there was no violation of the Eighth Amendment due to deliberate indifference to

21

serious medical needs, and (2) even if there was a constitutional violation, the case law does not clearly establish that the actions (or inactions) of Defendants in this case violated the Eighth Amendment. As to Defendants' first argument, the Court has already found that several genuine disputes of material fact exist as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. The Court thus moves to part two of the qualified immunity analysis, whether the right was clearly established.

### 2. Clearly Established Law

"In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quoting *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004)).

Under Ninth Circuit law, a delay in providing medical treatment, including a medical device, which causes pain and further injury, constitutes deliberate indifference. *Hunt*, 865 F.2d at 201 (delay in treatment for serious dental condition); *see also Jett*, 439 F.3d at 1098 (delay in referring plaintiff to an orthopedist who could have properly set and cast his fractured thumb); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (repeated failure to treat could amount to deliberate indifference), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Based on this a reasonable official who knew of Plaintiff's complaints regarding his devices could violate a clearly established constitutional right. And because, as discussed above, there is a genuine dispute of material fact as to whether there was a delay in providing an adequate medical device, summary judgment is inappropriate. *See Lavender v. Lampert*, 242 F. Supp. 2d 821, 845-46 (D. Or. 2002) ("considering the legal precedent in the Ninth Circuit, set forth above, a reasonable official who observed, or who was notified about, plaintiff's injuries sustained from inappropriate

footwear, would know that delays or failure to mitigate or prevent further pain and damage to plaintiff's right foot would constitute the unnecessary and wanton infliction of pain, and would therefore violate a clearly established constitutional right.").

Because Defendants have failed to meet their burden of showing the absence of a genuine dispute of material fact as to whether they are entitled to qualified immunity, summary judgment is denied on this ground.

**IV.    Conclusion**

It is therefore ordered that Judge Denney's Report and Recommendation (ECF No. 44) is ADOPTED in part and REJECTED in part in accordance with this order. Judge Denney's Report and Recommendation is adopted as to the issues of Defendants' errata, summary judgment for all Defendants on Plaintiff's ADA claim, and summary judgment in favor of Defendants Fukagawa and Mitchell on Plaintiff's Eighth Amendment Claim. The Report and Recommendation is rejected as to the issue of summary judgment for Defendant Keast as to Plaintiff's Eighth Amendment Claim.

It is further ordered that Defendants' motion for summary judgment (ECF No. 32) is GRANTED IN PART as follows: Summary judgment for Defendants is GRANTED as to Plaintiff's ADA claim. Summary judgment is GRANTED for Defendants Fukagawa and Mitchell as to Plaintiff's Eighth Amendment claim. Summary judgment is DENIED for Defendant Keast as to Plaintiff's Eighth Amendment claim.

Dated this 6th day of March 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE